UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

LAWRENCE YOUNG, Individually and on Behalf
of All Other Persons Similarly Situated,

                Plaintiff,

     v.

STEW LEONARD'S INC., STEW LEONARD'S
YONKERS LLC, STEW LEONARD'S
FARMINGDALE LLC, STEW LEONARD'S
EAST MEADOW LLC, Jointly and Severally,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ECF CASE

No.: _____

CLASS ACTION COMPLAINT

JURY TRIAL DEMANDED

INTRODUCTION

1.     Plaintiff Lawrence Young, individually and on behalf of others similarly

situated, asserts claims under the Americans With Disabilities Act, New York State

Human Rights Law, and New York State Civil Rights Law against Defendants Stew

Leonard's Inc., Stew Leonard's Yonkers LLC, Stew Leonard's Farmingdale LLC and

Stew Leonard's East Meadow LLC.

2.     Plaintiff Young is a visually impaired and legally blind person who

requires screen-reading software to read website content using his computer. The terms

"blind" or "visually-impaired" refers to all people with visual impairments who meet the

legal definition of blindness in that they have a visual acuity with correction of less than

or equal to 20 x 200. Some blind people who meet this definition have limited vision;

others have no vision.

3.     Based on a 2010 U.S. Census Bureau report, approximately 8.1 million

people in the United States are visually impaired, including 2.0 million who are blind,

and according to the American Foundation for the Blind's 2015 report, approximately 400,000 visually impaired persons live in the State of New York.

4.      Plaintiff Young brings this civil rights action against Defendants Stew Leonard's Inc., Stew Leonard's Yonkers LLC, Stew Leonard's Farmingdale LLC and Stew Leonard's East Meadow LLC (collectively "Stew Leonard's" or "Company") for their failure to design, construct, maintain, and operate their website, www.stewleonards.com (the "Website" or "Stew Leonard's Website"), to be fully accessible to and independently usable by Plaintiff Young and other blind or visually-impaired people. Stew Leonard's denies full and equal access to the Website, thereby denying its products and services offered on its Website and in conjunction with its physical locations, violating Plaintiff's rights under the Americans with Disabilities Act ("ADA").

5.      Plaintiff Young seeks a permanent injunction to cause Stew Leonard's to change its corporate policies, practices, and procedures so that the Website will become and remain accessible to blind and visually-impaired consumers.

JURISDICTION AND VENUE

6.      This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181, *et seq*., and 28 U.S.C. § 1332.

7.      This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's New York State Human Rights Law, N.Y. Exec. Law Article 15, ("NYSHRL") claim.

8.      Venue is proper in this district under 28 U.S.C. §1391(b)(1) and (2) because Plaintiff resides in this District, and Stew Leonard's conducts and continues to conduct a substantial and significant amount of business in this District.

9.      Stew Leonard's is subject to personal jurisdiction in this District. Stew Leonard's has been and is committing the acts or omissions alleged herein in the Southern District of New York that caused injury, and violated rights the ADA prescribes to Plaintiff and to other blind and other visually impaired-consumers. A substantial part of the acts and omissions giving rise to Plaintiff's claims occurred in the in this District: on separate occasions, he has been denied the full use and enjoyment of the facilities, goods, and services of the Website while in Bronx County. These access barriers that Plaintiff encountered have caused a denial of his full and equal access multiple times in the past, and now deter him on a regular basis from visiting Stew Leonard's brick-and-mortar store locations.

10.     This Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

11.     Plaintiff Young, at all relevant times, is a resident of Bronx, New York, Bronx County. As a blind, visually-impaired handicapped person, he is a member of a protected class of individuals under Title III of the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing Title III of the ADA set forth at 28 CFR §§ 36.101 *et seq.*, and the NYSHRL.

12.     Stew Leonard's Inc. is at all relevant times a Foreign Corporation that is organized under Connecticut Law and registered to do business in the State of New York.

13.     Stew Leonard's Yonkers LLC is at all relevant times a Domestic Limited Liability Company organized under New York law and registered to do business in the State of New York.

14.     Stew Leonard's Farmingdale LLC is at all relevant times a Domestic Limited Liability Company organized under New York law and registered to do business in the State of New York.

15.     Stew Leonard's East Meadow LLC is at all relevant times a Domestic Limited Liability Company organized under New York law and registered to do business in the State of New York.

<u>NATURE OF ACTION</u>

16.     The Internet has become a significant source of information, a portal, and a tool for conducting business, doing everyday activities such as shopping, learning, banking, researching, as well as many other activities for sighted, blind and visually-impaired persons alike.

17.     In today's tech-savvy world, blind and visually-impaired people can access websites using keyboards in conjunction with screen access software that vocalizes the visual information found on a computer screen or displays the content on a refreshable Braille display. This technology is known as screen-reading software. Screen-reading software is currently the only method a blind or visually impaired person may independently access the Internet. Unless websites are designed to be read by screen-reading software, blind and visually impaired persons are unable to fully access websites, and the information, products, and services contained thereon.

18.     Blind and visually impaired users of Windows operating system-enabled computers and devices have several screen-reading software programs available to them. Some of these programs are available for purchase and other programs are available without the user having to purchase the program separately. Job Access With Speech, otherwise known as "JAWS" is currently the most popular, separately purchased and downloaded screen-reading software program available for a Windows computer.

19.     For screen-reading software to function, the information on a website must be capable of being rendered into text. If the website content is not capable of being rendered into text, the blind or visually impaired user is unable to access the same content available to sighted users.

20.     The international website standards organization, the World Wide Web Consortium, known throughout the world as W3C, has published version 2.0 of the Web Content Accessibility Guidelines ("WCAG 2.0"). WCAG 2.0 are well-established guidelines for making websites accessible to blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure its websites are accessible.

21.     Non-compliant websites pose common access barriers to blind and visually-impaired persons:

    a.      A text equivalent for every non-text element is not provided;

    b.      Title frames with text are not provided for identification and navigation;

    c.      Equivalent text is not provided when using scripts;

d.      Forms with the same information and functionality as for sighted persons are not provided;

e.      Information about the meaning and structure of content is not conveyed by more than the visual presentation of content;

f.      Text cannot be resized without assistive technology up to 200% without losing content or functionality;

g.      If the content enforces a time limit, the user is not able to extend, adjust or disable it;

h.      Web pages do not have titles that describe the topic or purpose;

i.      The purpose of each link cannot be determined from the link text alone or from the link text and its programmatically determined link context;

j.      One or more keyboard operable user interface lacks a mode of operation where the keyboard focus indicator is discernible;

k.      The default human language of each web page cannot be programmatically determined;

l.      When a component receives focus, it may initiate a change in context;

m.      Changing the setting of a user interface component may automatically cause a change of context where the user has not been advised before using the component;

n.      Labels or instructions are not provided when content requires user input, which include captcha prompts that require the user to verify that he or she is not a robot;

o.      In content which is implemented by using markup languages, elements do not have complete start and end tags, elements are not nested according to its specifications, elements may contain duplicate attributes and/or any IDs are not unique;

p.      Inaccessible Portable Document Format (PDFs); and,

q.      The name and role of all User Interface elements cannot be programmatically determined; items that can be set by the user cannot be programmatically set; and/or notification of changes to these items is not available to user agents, including assistive technology.

STATEMENT OF FACTS

Stew Leonard's Website And Its Barriers

22.     Stew Leonard's offers its Website to the public and it offers features that should allow all consumers to access the goods and services that Stew Leonard's offers about its physical locations.

23.     Stew Leonard's Website is heavily integrated with its physical stores, serving as a gateway to those brick and mortar locations. Through the Website, Stew Leonard's customers are, *inter alia,* able to: learn the location and operation hours of the physical locations; learn what produce, meat, bakery, seafood, prepared foods and similar items are available for sale; order catering items, gift items, fruit baskets, brownie baskets and similar items for delivery and in-store pick up; learning what items are seasonal and particularly fresh; sign up for specials and learn about weekly specials; learn about and purchase Stew's Garden Rewards purchase a gift card; learn about the company's return policies; and learn about recommendations the company is making about its products and in-store events.

24.     It is, upon information and belief, Stew Leonard's policy and practice to deny Plaintiff Young and other blind or visually-impaired users access to the Website, thereby denying the goods and services that are offered and integrated with Stew Leonard's stores. Due to Stew Leonard's failure and refusal to remove access barriers to its Website, Plaintiff Young and visually-impaired persons have been and are still being denied equal access to Stew Leonard's stores and the numerous goods, services, and benefits offered to the public through the Website.

25.     Plaintiff Young cannot use a computer without the assistance of screen-reading software. He is, however, a proficient JAWS screen-reader user and uses it to access the Internet. He has visited the Website on separate occasions using the JAWS screen-reader.

26.     During his visits to the Website, the last occurring in May 2017, Plaintiff Young encountered multiple access barriers that denied him full and equal access to the facilities, goods and services offered to the public and made available to the public; and that denied him the full enjoyment of the facilities, goods, and services of the Website, as well as to the facilities, goods, and services of Stew Leonard's physical locations in New York by being unable to: learn the location and operation hours of the physical locations; learn what produce, meat, bakery, seafood, prepared foods and similar items are available for sale; order catering items, gift items, fruit baskets, brownie baskets and similar items for delivery or in-store pick up; learn what items are seasonal and particularly fresh; sign up for specials and learn about weekly specials; learn about and purchase Stew's Garden Rewards purchase a gift card; learn about the company's return policies; and learn about recommendations the company is making about its products and in-store events.

27.     While attempting to navigate the Website, Plaintiff Young encountered multiple accessibility barriers for blind or visually-impaired people:

a.     Lack of Alternative Text ("alt-text"), or a text equivalent. Alt-text is an invisible code embedded beneath a graphical image on a website. Web accessibility requires that alt-text be coded with each picture so that screen-reading software can speak the alt-text where a sighted user sees pictures, which includes captcha prompts. Alt-text does not change the visual presentation, but instead a text box shows when the mouse moves over the picture. The lack of alt-text on these graphics prevents screen readers from accurately vocalizing a description of the graphics. As a result, visually-impaired Stew Leonard's customers are unable to determine what is on the website, browse, look for store locations and hours of operation, check out Stew Leonard's programs and specials, or make any purchases;

b.     Empty Links That Contain No Text causing the function or purpose of the link to not be presented to the user. This can introduce confusion for keyboard and screen-reader users;

c.     Redundant Links where adjacent links go to the same URL address which results in additional navigation and repetition for keyboard and screen-reader users; and

d.     Linked Images Missing Alt-text, which causes problems if an image within a link contains no text and that image does not provide alt-text. A screen reader then has no content to present the user as to the function of the link, including information contained in PDFs.

Stew Leonard's Must Remove Barriers to Its Website

28.    Due to the inaccessibility of its Website, blind and visually-impaired customers such as Plaintiff Young, who need screen-readers, cannot fully and equally use or enjoy the facilities, goods, and services Stew Leonard's offer to the public on its Website. The Website's access barriers that Plaintiff Young encountered have caused a denial of his full and equal access in the past, and now deter him on a regular basis from accessing the Website. These access barriers have likewise deterred him from visiting Stew Leonard's physical stores and enjoying them equal to sighted individuals.

29.    If the Website was equally accessible to all, Plaintiff Young could independently navigate it and complete a desired transaction as sighted individuals do.

30.    Through his attempts to use the Website, Plaintiff Young has actual knowledge of the access barriers that make these services inaccessible and independently unusable by blind and visually-impaired people.

31.    Because simple compliance with the WCAG 2.0 Guidelines would provide Plaintiff Young and other visually-impaired consumers with equal access to the Website, Plaintiff Young alleges that Stew Leonard's has engaged in acts of intentional discrimination, including but not limited to the following policies or practices:

a.    Constructing and maintaining a website that is inaccessible to visually-impaired individuals, including Plaintiff;

b.    Failing to construct and maintain a website that is sufficiently intuitive so as to be equally accessible to visually-impaired individuals, including Plaintiff; and,

-10-

c.     Failing to take actions to correct these access barriers in the face of substantial harm and discrimination to blind and visually impaired consumers, such as Plaintiff, as a member of a protected class.

32.     Stew Leonard's therefore uses standards, criteria or methods of administration that have the effect of discriminating or perpetuating the discrimination of others, as alleged herein.

33.     Title III of the ADA expressly contemplates the injunctive relief that Plaintiff seeks:

In the case of violations of . . . this title, injunctive relief shall include an order to alter facilities to make such facilities readily accessible to and usable by individuals with disabilities . . . Where appropriate, injunctive relief shall also include requiring the . . . modification of a policy . . .

42 U.S.C. § 12188(a)(2).

34.     Because the Website has never been equally accessible, and because Stew Leonard's lacks a corporate policy that is reasonably calculated to cause its Website to become and remain accessible, Plaintiff Young seeks a permanent injunction under 42 U.S.C. § 12188(a)(2) requiring Stew Leonard's to retain a qualified consultant acceptable to Plaintiff to assist Stew Leonard's to comply with WCAG 2.0 guidelines for its Website:

a.     Training Stew Leonard's employees and agents who develop the Website on accessibility compliance under the WCAG 2.0 guidelines;

b.     Regularly checking the accessibility of the Website under the WCAG 2.0 guidelines;

     c.     Regularly testing user accessibility by blind or vision-impaired persons to ensure that Stew Leonard's Website complies under the WCAG 2.0 guidelines; and,

     d.     Developing an accessibility policy that is clearly disclosed on Stew Leonard's Websites, with contact information for users to report accessibility-related problems.

35.     Although Stew Leonard's may currently have centralized policies regarding maintaining and operating its Website, Stew Leonard's lacks a plan and policy reasonably calculated to make them fully and equally accessible to, and independently usable by, blind and other visually impaired consumers.

36.     Without injunctive relief, Plaintiff Young and other visually impaired consumers will continue to be unable to independently use the Website, violating its rights.

37.     Stew Leonard's has, upon information and belief, invested substantial sums in developing and maintaining its Website and has generated significant revenue, directly and indirectly, from the Website. These amounts are far greater than the associated cost of making its Website equally accessible to visually impaired customers.

38.     Stew Leonard's has failed to take any prompt and equitable steps to remedy its discriminatory conduct. These violations are ongoing.

<u>CLASS ACTION ALLEGATIONS</u>

39.     Plaintiff Young seeks to certify a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access Stew Leonard's Website and as a result have been denied access to the equal

enjoyment of goods and services offered in Stew Leonard's physical locations, during the relevant statutory period ("Class Members").

40.     Plaintiff Young seeks to certify a State of New York subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the State of New York who have attempted to access the Website and as a result have been denied access to the equal enjoyment of goods and services offered in Stew Leonard's physical locations, during the relevant statutory period ("New York Subclass Members").

41.     Common questions of law and fact exist amongst the Class Members, and New York Subclass Members:

a.     Whether Stew Leonard's Website is a "public accommodation" under Title III of the ADA;

b.     Whether Stew Leonard's Website is a "place or provider of public accommodation" under the NYSHRL;

c.     Whether Stew Leonard's Website denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating Title III of the ADA; and

d.     Whether Stew Leonard's Website denies the full and equal enjoyment of its goods, services, facilities, privileges, advantages, or accommodations to people with visual disabilities, violating the NYSHRL.

42.     Plaintiff's claims are typical of the Class Members, and New York Subclass Members: they are all severely visually impaired or otherwise blind, and claim that Stew Leonard's has violated Title III of the ADA and NYSHRL by failing to update

or remove access barriers on its Website so it can be independently accessible to the visually impaired individuals.

43.    Plaintiff Young will fairly and adequately represent and protect the Class and Subclass' interests because he has retained and is represented by counsel competent and experienced in complex class action litigation, and because he has no interests antagonistic to the Class or Subclass. Class certification of the claims is appropriate under Fed. R. Civ. P. 23(b)(2) because Stew Leonard's has acted or refused to act on grounds generally applicable to the Class and Subclass, making appropriate both declaratory and injunctive relief with respect to Plaintiff, the Class and Subclass.

44.    Alternatively, class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because fact and legal questions common to Class and Subclass Members predominate over questions affecting only individuals, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation.

45.    Judicial economy will be served by maintaining this lawsuit as a class action in that it is likely to avoid the burden that would be otherwise placed upon the judicial system by the filing of numerous similar suits by people with visual disabilities throughout the United States.

FIRST CAUSE OF ACTION
VIOLATIONS OF THE ADA, 42 U.S.C. § 12181 *et seq.*

46.    Plaintiff Young, individually and on behalf of the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

47.    Title III of the ADA prohibits "discriminat[ion] on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages,

or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

48.     Stew Leonard's stores are public accommodations within the definition of Title III of the ADA, 42 U.S.C. § 12181(7). Its Website is a service, privilege, or advantage of Stew Leonard's stores. The Website is a service that is integrated with these locations.

49.     Under Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

50.     Under Title III of the ADA, it is unlawful discrimination to deny individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals. 42 U.S.C. § 12182(b)(1)(A)(ii).

51.     Under Title III of the ADA, unlawful discrimination also includes, among other things:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; and a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

52.     The acts alleged herein constitute violations of Title III of the ADA, and the regulations promulgated thereunder. Plaintiff Young, who is a member of a protected class of persons under Title III of the ADA, has a physical disability that substantially limits the major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, he has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons.

53.     Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff Young requests the relief as set forth below.

<u>SECOND CAUSE OF ACTION</u>
VIOLATIONS OF THE NYSHRL

54.     Plaintiff Young, individually and on behalf of the New York Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

55.     N.Y. Exec. Law § 296(2)(a) provides that it is "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation . . . because of the . . . disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

56.     Stew Leonard's physical locations are in the State of New York and throughout the United States and constitute sales establishments and public accommodations within the definition of N.Y. Exec. Law § 292(9). Stew Leonard's

Website is a service, privilege or advantage of Stew Leonard's. Stew Leonard's Website is a service that is by and integrated with these physical locations.

57.     Stew Leonard's is subject to NYSHRL because it owns and operates its physical locations and the Website. Stew Leonard's is a "person" within the meaning of N.Y. Exec. Law § 292(1).

58.     Stew Leonard's is violating N.Y. Exec. Law § 296(2)(a) in refusing to update or remove access barriers to its Website, causing its Website and the services integrated with its physical locations to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods and services that Stew Leonard's makes available to the non-disabled public.

59.     Under N.Y. Exec. Law § 296(2)(c)(i), unlawful discriminatory practice includes, among other things, "a refusal to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities, unless such person can demonstrate that making such modifications would fundamentally alter the nature of such facilities, privileges, advantages or accommodations being offered or would result in an undue burden."

60.     Under N.Y. Exec. Law § 296(2)(c)(ii), unlawful discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden."

61.     Readily available, well-established guidelines exist on the Internet for making websites accessible to the blind and visually impaired. These guidelines have been followed by other large business entities and government agencies in making their websites accessible, including but not limited to: adding alt-text to graphics and ensuring that all functions can be performed using a keyboard. Incorporating the basic components to make its Website accessible would neither fundamentally alter the nature of its business nor result in an undue burden to them.

62.     Stew Leonard's actions constitute willful intentional discrimination against the class because of a disability, violating the NYSHRL, N.Y. Exec. Law § 296(2), in that Stew Leonard's has:

a.     Constructed and maintained a website that is inaccessible to blind class members with knowledge of the discrimination; and/or

b.     Constructed and maintained a website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

c.     Failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

63.     Stew Leonard's discriminates, and will continue in the future to discriminate against Plaintiff Young and New York Subclass Members on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, accommodations and/or opportunities of Stew Leonard's Website and its physical locations under § 296(2) *et seq.* and/or its implementing regulations. Unless the Court enjoins Stew Leonard's from continuing to engage in these unlawful practices, Plaintiff and the New York Subclass Members will continue to suffer irreparable harm.

64.     As Stew Leonard's actions violate the NYSHRL, Plaintiff Young seeks injunctive relief to remedy the discrimination.

65.     Plaintiff Young is also entitled to compensatory damages, as well as civil penalties and fines under N.Y. Exec. Law § 297(4)(c) *et seq*. for every offense.

66.     Plaintiff Young is also entitled to reasonable attorneys' fees and costs.

67.     Under N.Y. Exec. Law § 297 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

<u>THIRD CAUSE OF ACTION</u>
VIOLATION OF THE NEW YORK STATES CIVIL RIGHTS LAW

68.     Plaintiff Young, individually and on behalf the New York Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

69.     Plaintiff Young served notice of this lawsuit upon the attorney general as required by N.Y. Civ. Rights Law § 41.

70.     N.Y. Civ. Rights Law § 40 provides that "all persons within the jurisdiction of this state shall be entitled to the full and equal accommodations, advantages, facilities and privileges of any places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No persons, being the owner, lessee, proprietor, manager, superintendent, agent, or employee of any such place shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities and privileges thereof . . ."

71.     N.Y. Civ. Rights Law § 40-c(2) provides that "no person because of . . . disability, as such term is defined in section two hundred ninety-two of executive law, be

subjected to any discrimination in his or her civil rights, or to any harassment, as defined in section 240.25 of the penal law, in the exercise thereof, by any other person or by any firm, corporation or institution, or by the state or any agency or subdivision."

72.     Stew Leonard's physical locations are sales establishments and public accommodations within the definition of N.Y. Civ. Rights Law § 40-c(2). Stew Leonard's Website is a service, privilege or advantage of Stew Leonard's and its Website is a service that is by and integrated with these establishments.

73.     Stew Leonard's is subject to New York Civil Rights Law because it owns and operates its physical locations and Website. Stew Leonard's is a person within the meaning of N.Y. Civ. Rights Law § 40-c(2).

74.     Stew Leonard's is violating N.Y. Civil Rights Law § 40-c(2) in refusing to update or remove access barriers to its Website, causing its Website and the services integrated with Stew Leonard's physical locations to be completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, goods and services that Stew Leonard's makes available to the non-disabled public.

75.     N.Y. Civ. Rights Law § 41 states that "any corporation which shall violate any of the provisions of sections forty, forty-a, forty-b or forty two . . . shall for each and every violation thereof be liable to a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby . . ."

76.     Under N.Y. Civ. Rights Law § 40-d, "any person who shall violate any of the provisions of the foregoing section, or subdivision three of section 240.30 or section 240.31 of the penal law, or who shall aid or incite the violation of any of said provisions shall for each and every violation thereof be liable to a penalty of not less than one

hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby in any court of competent jurisdiction in the county in which the Defendants shall reside . . ."

77.    Stew Leonard's discriminates, and will continue to discriminate against Plaintiff Young and the New York Subclass Members on the basis of disability, as they are being directly or indirectly refused, withheld from, or denied the accommodations, advantages, facilities and privileges thereof in § 40 *et seq.* and/or its implementing regulations.

78.    Plaintiff Young is entitled to compensatory damages of $500 per instance, as well as civil penalties and fines under for every offense. N.Y. Civ. Rights Law § 40 *et seq.*

FOURTH CAUSE OF ACTION
DECLARATORY RELIEF

79.    Plaintiff Young, individually and on behalf the Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

80.    An actual controversy has arisen and now exists between the parties in that Plaintiff Young contends, and is informed and believes that Stew Leonard's denies, that its Website contains access barriers denying blind customers the full and equal access to the goods, services and facilities of its Website and by extension its physical locations, which Stew Leonard's owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y. Exec. Law § 296, *et seq.* prohibiting discrimination against the blind.

81.     A judicial declaration is necessary and appropriate now in order that each of the parties may know its respective rights and duties and act accordingly.

<u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff Young respectfully requests this Court grant the following relief:

a.     A preliminary and permanent injunction to prohibit Stew Leonard's from violating Title III of the ADA, 42 U.S.C. §§ 12182, *et seq.*, N.Y. Exec. Law § 296, *et seq.*, and the laws of New York;

b.     A preliminary and permanent injunction requiring Stew Leonard's to take all the steps necessary to make its Website into full compliance with the requirements set forth in Title III of the ADA, and its implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c.     A declaration that Stew Leonard's owns, maintains and/or operates its Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by ADA, 42 U.S.C. §§ 12182, *et seq.*, N.Y. Exec. Law § 296, *et seq.*, and the laws of New York

d.     An order certifying the Class and Subclass under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and his attorneys as Class Counsel;

e.     Compensatory damages in an amount to be determined by proof, including all applicable statutory damages and fines, to Plaintiff and the proposed class for violations of its civil rights under NYSHRL;

f.     Pre- and post-judgment interest;

g.    An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h.    Such other and further relief as this Court deems just and proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff Young demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
  July 6, 2017

       BRONSON LIPSKY LLP


       s/ Douglas B. Lipsky
       Douglas B. Lipsky
       630 Third Avenue, Fifth Floor
       New York, New York 10017-6705
       Tel: 212.392.4772
       Fax: 212.444.1030
       dl@bronsonlipsky.com

       Jeffrey M. Gottlieb
       Dana L. Gottlieb
       GOTTLIEB & ASSOCIATES
       150 East 18th Street, Suite PHR
       New York, New York 10003
       Tel: 212.228.9795
       Fax: 212.982.6284
       nyjg@aol.com
       danalgottlieb@aol.com